IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RJSG PROPERTIES, LLC,
          Plaintiff,

v.                                         Case No. 3:08cv302/MCR/EMT

MARBELLA CONDOMINIUM DEVELOPERS, LLC;
STEVEN P. DELGALLO, personally;
JEFFREY V. SIREN, personally and d/b/a BEACH PROPERTIES;
MICHAEL IOVIENO, personally,
          Defendants.
_____/

# O R D E R

In this action Plaintiff RJSG Properties, LLC ("RJSG"), alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and Florida law in connection with the purchase of a condominium unit in Destin, Florida.[1] This matter is now before the court upon RJSG's "Amended Motion to Disqualify Keefe, Anchors, Gordon & Moyle, P.A. from Representing Defendant Steven Delgallo [sic]" (Doc. 124), to which Defendant Steven DelGallo ("DelGallo") has responded in opposition (Doc. 138). With leave of court, RJSG filed a reply (Doc. 148) and supplemental affidavits (Doc. 159) *in camera.* Also pending are RJSG's motion requesting a hearing on its amended motion to disqualify (Doc. 125) and DelGallo's response opposing (Doc. 139), as well as DelGallo's motion to review the affidavits filed *in camera*

---

[1] The district court referred this matter to the undersigned by order dated September 11, 2009, due to Defendant Jeffrey V. Siren's pro se status (Doc. 158). The case is referred for all pretrial proceedings, including preliminary orders, conduct of necessary hearings, and, with respect to any dispositive motions, the filing of a report and recommendation containing proposed findings of fact and conclusions of law and recommended disposition of the case (*Id.*).

(Doc. 164) and RJSG's response opposing (Doc. 165). As explained below, the court denies RJSG's motions. It also denies DelGallo's motion, as moot.

I. BACKGROUND

The following is taken from the district court's June 10, 2009, order denying DelGallo's and Defendant Jeffrey V. Siren's motions to dismiss (Doc. 108).[2]

RJSG alleges the following facts in its amended complaint and RICO case statement. In late 2002 or early 2003, DelGallo—manager of the then-undeveloped Marbella Condominiums (Marbella) in Destin—obtained construction financing for the erection of Marbella. Bank of America's financing agreement required that DelGallo pre-sell at least thirty-five units in Marbella before the bank would release the construction funds. By the fall of 2003, DelGallo had not sold the required units. According to the allegations, as a result, DelGallo authorized co-defendant Michael Iovieno (Iovieno) to buy various individuals' names and credit ratings for use as "sham purchasers" to convince investors of market interest in the property in an effort to persuade them to buy the units. Iovieno and Siren—a real estate broker with whom Iovieno registered his real-estate license—hired between ten and fifteen sham purchasers to enter into purchase agreements, which contained addenda protecting the sham purchasers from a binding deal on the units. Iovieno and Siren promised the sham purchasers $75,000 for the use of their names and credit histories, as well as a portion of the profits made if Iovieno and Siren sold units at an inflated price.

In December 2004, plaintiff and defendants Iovieno and Siren, as well as Ron Walters, a Florida realtor licensed under Siren's broker's license, met to discuss the purchase of a unit in Marbella. Walters told plaintiff that the "hot" Destin real-estate market would allow plaintiff to "flip" the unit and make a profit. That same month, plaintiff again met with Walters and Siren, who informed plaintiff that the price of $850,000 for unit 5C was below market and that plaintiff could sell the unit for more than $1 million in about a month's time. During the meeting, Iovieno and Siren told plaintiff that Kashif Shaukat (Shaukat), who[ ] plaintiff later learned was a sham purchaser, would assign to plaintiff Shaukat's contract to purchase unit 5C. In reliance on the representations, plaintiff paid $226,339.50 to Siren's company, Beach Properties, for the contract assignment [on or about December 14, 2004].

In July 2008, RJSG filed a six-count complaint against Marbella Condominium Developers, LLC, DelGallo, Iovieno, Siren, and Siren's company, Beach Properties. Counts I, II, and III of the complaint are federal claims brought under the RICO Act. Counts IV and VI are common-law claims for rescission and fraud and fraud in the inducement respectively. Count V is a statutory claim for breach of professional

_____

[2] Footnotes have been omitted.

duty under Fla. Stat. § 475.278.  As relief, RJSG seeks damages (treble for the RICO claims), as well as injunction of defendants' practices, rescission of the contract, punitive damages, interest, costs, and attorneys' fees.

(Doc. 108 at 1–3).

In reciting the facts that bear on the present disqualification controversy and in making its rulings against RJSG in this order, the court does not reveal any arguably confidential or privileged information that RJSG submitted *in camera*, including with respect to any disputed (either material or immaterial) facts.  Rather, the court simply outlines the facts it concludes are relevant to disposition of the motions, referencing averments from the affidavits (including any sealed affidavits) only as necessary and without providing details that might implicate sensitive information.

The relevant, non-confidential or privileged facts taken from the affidavits include the following.[3]  Attorney John N. Ledbetter, of the firm Ledbetter & Gilmore, P.A., represents RJSG in this action.  Attorney William Martin ("Martin"), currently an associate with the firm of Keefe, Anchors, Gordon & Moyle ("KAGM"), represents DelGallo.  From January 2007 until February 2008 Martin was an associate with the firm Matthews & Hawkins, P.A. ("M & H").  Thomas M. Utterback ("Utterback") worked at M & H from March 2005 to July 2007 as a paralegal.[4]  He is now employed as a paralegal at Ledbetter & Gilmore, P.A.

Gary Sims ("Sims") is a principal of RJSG, a now-defunct limited liability company.  In either June 2005 or during the summer of 2006,[5] Sims hired attorney John W. Hawkins ("Hawkins"), an M & H shareholder, to form RJSG as a legal entity to purchase a Marbella condominium unit.

---

[3]  In addition to all affidavits, the court has considered any exhibits the parties have submitted.

[4]  Utterback once was licenced to practice as an attorney in Missouri but is now disbarred; at the time relevant to the events in this case he was not a licensed attorney in the State of Florida.

[5]  Sims indicates that RJSG was formed as a limited liability company in the summer of 2006 but Martin states this occurred June 2005.  Given the allegations in the amended complaint that Plaintiff paid Beach Properties the earnest money deposit on the contract assignment on December 14, 2004, it appears more likely that the company was formed in June 2005, about six months after the assignment took place, as opposed to approximately one year later.  Moreover, a search of the website for the Florida Department of State — Division of Corporations, reveals that Articles of Organization for RJSG Properties, LLC, were filed on June 8, 2005, listing John W. Harkins, Esq., as the registered agent.  *See* www.sunbiz.org/search.html (searched by name, RJSG) (last visited October 26, 2009).

M & H also represented Randy Hammer ("Hammer") and Donna Fuhrman ("Fuhrman") in <u>Hammer v. Siren</u>, Case No. 2006-CA-5317, an action brought in the Circuit Court of the First Judicial Circuit in and for Okaloosa County, Florida, that pertained to Hammer and Fuhrman's purchase of another Marbella unit under circumstances purportedly similar to those alleged in this case. In <u>Hammer</u> the plaintiffs asserted claims under theories of breach of statutory duty, fraud, civil theft, and constructive trust against Siren and Beach Properties.[6] In or around October 2006, Hawkins contacted Sims regarding RJSG's purchase of the Marbella condominium. In meeting with Hawkins and other attorneys at that time Sims learned of the alleged circumstances underlying the claims in this action, and he agreed to be a witness in the <u>Hammer</u> case. Over the next months Sims was interviewed by Hawkins and other attorneys, but Sims cannot recall if Martin was among them. Sims was also interviewed, by Utterback and others, prior to a hearing in the <u>Hammer</u> case at which Sims and Hawkins were prepared to testify but ultimately did not take the stand.[7] While the two men waited together in an anteroom during the hearing, Sims asked Hawkins about M & H's potentially representing RJSG in its claims against the Defendants in this case, but after the hearing Hawkins never contacted Sims regarding such representation.

In February 2009 KAGM filed a motion—unopposed by Plaintiff—in which the firm sought permission to be substituted as lead counsel for DelGallo in this matter; the district court granted this motion (Docs. 68, 71). In May 2009 RJSG filed its initial motion to disqualify Martin and other KAGM attorneys (Doc. 93). The district court denied the motion, on the grounds the motion was not supported by an affidavit and Martin's affidavit filed in opposition refuted the allegations of a conflict (Doc. 110).

RJSG subsequently filed the instant amended motion to disqualify. Citing numerous Rules

---

[6] Beach Title Services, LLC, is also named as a defendant in the <u>Hammer</u> action (Doc. 39-3). The record before this court reflects that in <u>Hammer</u> the state court judge entered an order enjoining the release of certain escrow funds. The defendants challenged the injunction, but Martin successfully defended it on appeal. Reportedly, the parties ultimately settled this lawsuit.

[7] Sims recalls that the hearing took place on March 6, 2007, but Martin submits that Sims was not present at that hearing and must be remembering a different hearing, which occurred on January 10, 2007. Based on statements made in the affidavits, the court concludes that it is more likely that the hearing Sims recalls was not the March 6, 2007, hearing but rather the January 10, 2007, hearing, which took place prior to the time Martin commenced work at M & H.

of Professional Conduct of the Rules Regulating the Florida Bar, but evidently relying in particular on Rules 4-1.7, 4-1.9, 4-1.10, and 4-1.18, RJSG argues that Martin and KAGM must be disqualified because of Martin's previous representation of the plaintiffs in <u>Hammer</u>, in which the interests of Hammer and Furhman were adverse to DelGallo's. RJSG argues that it is in privity with Hammer and Fuhrman because M & H and Martin sought Sims out to be a witness in the <u>Hammer</u> litigation, solicited material information from Sims regarding RJSG's dealings with Marbella and its agents (including DelGallo), and brought to Sims' attention the facts giving rise to the claims in this case; furthermore, RJSG submits, given Hawkins' interactions with Sims, Martin's relationship to it is one of an attorney to a prospective client (Doc. 124 at 4). DelGallo responds that RJSG's motion should be denied because Martin never had a direct attorney/client relationship or even a prospective relationship with RJSG; Hawkins, not Martin, represented RJSG in forming the limited liability company and did so prior to Martin's association with M & H; and any confidential RJSG information that might be material to this litigation was never shared with Martin (Doc. 138 at 4).

II.     LEGAL STANDARD

Motions to disqualify counsel are governed by two sources of authority. First, attorneys are bound by the local rules of the court in which they appear. The Rules of Professional Conduct of the Rules Regulating the Florida Bar govern the professional conduct of members of the bar of the United States District Court of the Northern District of Florida. N.D. Fla. Loc. R. 11.1(E)(1). *See also* <u>Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.</u>, 380 F.3d 1331, 1338 (11th Cir. 2004). Second, federal common law also governs attorneys' professional conduct because motions to disqualify are substantive motions affecting the rights of the parties. *See* <u>Fed. Deposit Ins. Corp. v. U.S. Fire Ins. Co.</u>, 50 F.3d 1304, 1312 (5th Cir. 1995); <u>Cole v. Ruidoso Mun. Sch.</u>, 43 F.3d 1373, 1383 (10th Cir. 1994). If a district court bases its disqualification order on an allegation of an ethical violation, "the court may not simply rely on a general inherent power to admit and suspend attorneys, without any limit on such power." <u>Schlumberger Techs., Inc. v. Wiley</u>, 113 F.3d 1553, 1561 (11th Cir. 1997). Instead, "[t]he court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule." *Id.*

Although the court may order disqualification, motions to disqualify are viewed with

disfavor as an extraordinary remedy that should not be granted unless absolutely necessary. In re Jet 1 Ctr., Inc., 310 B.R. 649, 654 (Bankr. M.D. Fla. 2004); First Impressions Design and Mgt., Inc. v. All That Style Interiors, Inc., 122 F. Supp. 2d 1352, 1355 (S.D. Fla. 2000) (noting that "disqualification of a party's chosen counsel is an extraordinary remedy not generally in the public interest—a remedy that should be employed only sparingly"); Herschowsky v. The Guardianship of Herschowsky, 890 So. 2d 1246, 1247 (Fla. 4th DCA 2005) (explaining that "[i]t is well settled that disqualification, contrary to the wishes of counsel and client, should be resorted to rarely"). Moreover, disqualification should be sought with "'reasonable promptness . . . to prevent . . . using the motion as a tool to deprive [the movant's] opponent of counsel of his choice after completing substantial preparation of the case.'" Lee v. Gadasa Corp., 714 So. 2d 610, 612 (Fla. 1st DCA 1998) (quoting Transmark, U.S.A. v. State, Dep't of Ins., 631 So. 2d 1112 (Fla. 1st DCA 1994)). Indeed, a client's choice of counsel is entitled to "substantial deference," and a movant seeking to sever that relationship through disqualification must meet a high standard of proof. Jet 1 Ctr., 310 B.R. at 654; In re BellSouth Corp., 334 F.3d 941, 961 (11th Cir. 2003) (stating that the party bringing the motion to disqualify bears the burden of proving the grounds for disqualification) (citation omitted). "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist." In re BellSouth Corp., 334 F.3d at 961. A disqualification order "is a harsh sanction, often working substantial hardship on the client" and should therefore "be resorted to sparingly." Norton v. Tallahassee Mem'l Hosp., 689 F.2d 938, 941 n.4 (11th Cir. 1982).

III.    DISCUSSION

As an initial matter, after a thorough review of the parties' papers and consideration of all issues raised by RJSG, the court concludes that an evidentiary hearing is not required for disposition of this matter. See Allstate Ins. Co. v. Bowne, 817 So. 2d 994, 998 (Fla. 4th DCA 2002) (a hearing is not required on every motion to disqualify counsel, even when conflicting affidavits have been submitted).[8] Thus RJSG's request for a hearing on its motion is denied. As explained below, the court further concludes that in light of the relevant law, the affidavits and other evidence presented, RJSG is not entitled to the relief it seeks.

---

[8] Although they are not binding on this court, opinions of the Florida courts are persuasive. See In re Disciplinary Proceedings of John Doe, 876 F. Supp. 265, 269 n.5 (M.D. Fla. 1993).

The court first considers the application to this dispute of Rule 4-1.10 of the Rules Regulating the Florida Bar, which governs the imputation of conflicts of interest. Rule 4-1.10, Imputation of Conflicts of Interest; General Rule, provides in pertinent part:

> (a) Imputed Disqualification of All Lawyers in Firm. While lawyers are associated in a firm, none of them shall knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9 except as provided elsewhere in this rule, or unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

> (b) Former Clients of Newly Associated Lawyer. When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) that is material to the matter.

R. Regulating Fla. Bar 4-1.10(a)(b). With respect to subdivisions (a) and (b), the comment to the rule explains:

> Subdivision (a) operates only among the lawyers currently associated in a firm.

> * * * *

> Subdivision[ ] (b) [ ] operate[s] to disqualify the firm only when the lawyer involved has actual knowledge of information protected by rules 4-1.6 and 4-1.9(b). Thus, if a lawyer while with 1 firm acquired no knowledge or information relating to a particular client of the firm and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the 2 clients conflict.

R. Regulating Fla. Bar 4-1.10 cmt.

> In Scott v. Higginbotham, 834 So. 2d 221, 223 (Fla. 2d DCA 2002), the court explained that

> [U]nder rule 4-1.10(b), in order to establish a prima facie case for disqualification, the moving party must show that the newly associated attorney acquired confidential information in the course of the attorney's prior representation. [citations omitted] After the moving party meets this burden, the burden shifts to the firm whose disqualification is sought to show that the newly associated attorney has no knowledge of any material confidential information.

Scott, 834 So. 2d at 223.  Accordingly, in applying Rule 4-1.10 the court's first task is to determine whether the movant has shown that the attorney acquired confidential information relating to the movant's claims.  If the movant meets this burden, the court must then determine whether the attorney has overcome this prima facie showing and proved that he had no actual knowledge of any confidential information material to the case.  Bon Secours-Maria Manor Nursing Care Ctr., Inc., v. Seaman, 959 So. 2d 774, 776 (Fla. 2d DCA 2007).

Based on the evidence supplied by RJSG, the court concludes that RJSG has failed to make out a prima facie case for disqualifying Martin or KAGM by the application of Rule 4-1.10(a) or (b).  Initially, Martin was not involved in M & H's efforts to create RJSG as a legal entity—work that in any event was removed in time and substance from the claims asserted in this case.  There also is no evidence that Martin formally represented RJSG in any other matter during his relatively brief tenure at M & H.  Moreover, Martin did not solicit RJSG's business or give RJSG legal advice.  Most significantly, the court concludes that Martin did not acquire confidential information *material* to RJSG's claims in this case.  The vague assertions in Sims' unsealed affidavit and RJSG's other sealed affidavits do not support a different conclusion.  Regardless, assuming *arguendo* that RJSG had established a prima facie case, thus causing the burden to shift to DelGallo, the court nevertheless concludes that he has satisfied it, based on Martin's affidavit in which he completely disavows having acquired any knowledge of material information regarding RJSG's instant claim (*see, e.g.,* Doc. 138-2, ¶ 11) ("I have never been privy to any confidential information [RJSG] may have that is material to this matter or any other matter").[9]  Furthermore, even if Martin were in possession of factual information regarding Sims' purchase of the Marbella unit, having been published in the Hammer complaint those facts are no longer confidential (*see* Doc. 39-3).

Citing Gaton v. Health Coal, Inc., 745 So. 2d 510 (Fla. 3rd DCA 1999), RJSG contends that "[w]hen an attorney undertakes to represent a client in conflict with a former client, an entity or person in privity with the former client, or a person or entity that had been a prospective client, Florida law applies an 'irrefutable presumption that confidences were disclosed' between the client

---

[9]  Finding Martin's testimony consistent as a whole with the evidence presented, the court accords it great weight.  The court also concludes there is good reason to find Martin's testimony credible in light of his status as an officer of this court, as he would be subject to serious sanctions (including disbarment) if he were to provide a false affidavit to this court.

and the attorney" (Doc. 124 at 3). First, <u>Gaton</u> specifically states that while the presumption applies in cases involving a direct attorney/client relationship, in cases involving vicarious disqualification under Rule 4-1.10(b)—as here where the attorney at issue has moved from one firm to another—the presumption does not apply. <u>Gaton</u>, 745 So. 2d at 511. Rather, under Rule 4-1.10(b) "[t]here must be a showing that the newly associated attorney acquired confidential information during his prior representation." *Id.* The court has found that RJSG failed to make this showing. Moreover, there is no factual, much less legal, basis for the court to find that RJSG is somehow in privity with Hammer and Fuhrman, as RJSG submits, or that the benefits of any privileged relationship they shared with Hawkins should also be imputed to RJSG. For all of the foregoing reasons, the court concludes there is no basis to conclude that Martin (or KAGM) violated Rule 4-1.10 such that disqualification would be warranted.

Furthermore, application of Rule 4-1.18, Duties to Prospective Client, does not support RJSG's argument in support of disqualification. To the extent Hawkins and Sims spoke about M & H's possible representation of RJSG and Sims had a reasonable belief that the firm would take his case, the court will assume that RJSG was a prospective client of M & H's. Under Rule 4-1.18(b), an attorney who consults with a prospective client, even if no attorney/client relationship results, shall not use or reveal information learned in the consultation. But under Rule 4-1.18(c) an attorney subject to Rule 4-1.18(b) is only precluded from representing "a client with interests materially adverse to those of a prospective client in the same or a substantially related matter *if the lawyer received information from the prospective client that could be used to the disadvantage of that person in the matter . . . ."* R. Regulating Fla. Bar 4-1.18 (emphasis added). Martin has sworn that he is not in possession of any confidential information regarding RJSG, much less confidential information that could be used to RJSG's disadvantage (*see* Doc. 138-2).

To the extent RJSG relies on Rule 4-1.7, the court concludes that it too provides no basis for disqualifying Martin and KAGM from representing DelGallo. As its title reflects, Rule 4-1.7 governs conflicts of interest involving "Current Clients." Rule 4-1.7 (a) states in relevant part:

Representing Adverse Interests. Except as provided in subdivision (b), a lawyer shall not represent a client if:

(1) the representation of 1 client will be directly adverse to another client; or

(2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

R. Regulating Fla. Bar 4-1.7. Thus this rule governs conflicts between attorneys and existing, as opposed to former, clients. Indeed, this court has previously concluded that Rule 4-1.7 is properly applied only to cases involving an individual or entity that is a current client. *See* Fenik v. One Water Place, 2007 WL 527997, *2 (N.D. Fla. 2007) (describing Rule 4-1.7 as governing disqualification for conflicts of interest with a current client and Rule 4-1.9 as governing disqualification for conflicts of interests with a former client). RJSG is not, of course, an existing client of Martin's or KAGM's. Furthermore, RJSG has not shown there is a substantial risk that Martin's or KAGM's representation of DelGallo will be materially limited by Martin's prior representation of Hammer and Fuhrman. Even if there were such a risk, DelGallo has waived any potential conflict of interest.

Finally, RJSG also relies on Rule 4-1.9 of the Rules Regulating the Florida Bar, which governs disqualification for conflicts of interest with a former client. Rule 4-1.9, Conflict of Interest; Former Client, provides in relevant part:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents; or

(b) use information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known.

R. Regulating Fla. Bar 4-1.9.

As previously discussed, the application of Rule 4-1.9 creates an "irrefutable presumption that confidences were disclosed" between the former client and the attorney. Waldrep v. Waldrep, 985 So. 2d 700, 701–02 (Fla. 4th DCA 2008) (citations and internal quotation marks omitted). Even if a relationship between the former client and attorney is shown to have existed, however, the party seeking disqualification must still demonstrate that the matter involved "is the same matter or

substantially similar to the matter" in which the attorney represented the moving party.[10] <u>Junger Utility & Paving Co. v. Myers</u>, 578 So. 2d 1117, 1119 (Fla. 1st DCA 1989); *see also* <u>Key Largo Restaurant, Inc. v. T.H. Old Town Assocs., Ltd.</u>, 759 So. 2d 690, 693 (Fla. 5th DCA 2000). In this case, there is no need to reach the issue of whether this matter is "substantially related" to the <u>Hammer</u> matter because the court concludes that Rule 4-1.9 does not apply to Martin, for the simple reason that RJSG was never Martin's client.[11] *See* <u>Manning v. Cooper</u>, 981 So. 2d 668, 671 (Fla. 4th DCA 2008) (finding that Rule 4-1.9 did not apply to counsel for plaintiff, whom defendant sought to disqualify, because plaintiff's counsel had never represented defendant). Moreover, even if Rule 4-1.9 did apply, RJSG has not shown that DelGallo's interests in this action are materially adverse to those of Hammer and/or Fuhrman. Their lawsuit did not name DelGallo, asserted different claims from those raised in this action (with the exception of the fraud claims), and evidently has been resolved to the plaintiffs' satisfaction. Additionally, based on Martin's affidavit, the court finds that Martin possesses no information related to his prior representation of Hammer or Fuhrman that could be used to their disadvantage, including during his examination or cross-examination of them in a trial of this action. In the unlikely event that a legitimate concern otherwise should arise at trial, Martin would be precluded from using the information; to the extent this restriction might materially limit his ability to represent DelGallo, as noted, DelGallo has

---

[10] In 2006, the Florida Supreme Court approved amendments to the Comment for Rule 4-1.9 that narrowly define the concept "substantially related":

> Matters are "substantially related" for purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client. For example, a lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations; however, the lawyer would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent.

In re Amendments to the Rules Regulating The Florida Bar, 933 So. 2d 417, 445 (Fla. 2006).

[11] DelGallo asserts that RJSG does not have standing to seek disqualification in this case based on an alleged conflict of interest between DelGallo and Hammer/Fuhrman, a conflict which has no relationship to the interests of RJSG. The court agrees that the relationships are quite attenuated between the parties that RJSG asserts give rise to an impermissible conflict of interest; moreover, RJSG was not Martin's current or former client as contemplated by Rule 4-1.7 or Rule 4-1.9. For purposes of this motion, however, the court will accept that RJSG has standing to object to Martin's representation of DelGallo. *See* <u>AlliedSignal Recovery Trust v. AlliedSignal, Inc.</u>, 934 So. 2d 675, 679 n.2 (Fla. 2d DCA 2006).

waived any potential conflict of interest.

IV.     CONCLUSION

For the foregoing reasons, RJSG's motion for disqualification and motion for a hearing are denied. DelGallo's motion to review the affidavits filed *in camera* is denied as moot.

Accordingly, it is **ORDERED**:

1.      Plaintiff RJSG's "Amended Motion to Disqualify Keefe, Anchors, Gordon & Moyle, P.A. from Representing Defendant Steven Delgallo [sic]" (Doc. 124) is **DENIED.**

2.      Plaintiff RJSG's motion requesting a hearing on its amended motion to disqualify (Doc. 125) is **DENIED**.

3.      Defendant DelGallo's motion to review the affidavits filed *in camera* (Doc. 164) is **DENIED**, as moot.

**DONE AND ORDERED** this 28th day of October 2009.


                              /s/ *Elizabeth M. Timothy*
                              **ELIZABETH M. TIMOTHY**
                              **UNITED STATES MAGISTRATE JUDGE**