IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


RJSG PROPERTIES, LLC,
              Plaintiff,

v.                                                    Case No. 3:08cv302/MCR/EMT


MARBELLA CONDOMINIUM DEVELOPERS, LLC;
STEVEN P. DELGALLO, personally;
JEFFREY V. SIREN, personally and d/b/a BEACH PROPERTIES;
MICHAEL IOVIENO, personally,
              Defendants.


STEVEN P. DELGALLO,
              Cross-Claimant,

v.

JEFFREY V. SIREN, and
MICHAEL IOVIENO,
              Cross-Defendants.
_____/

## ORDER, REPORT AND RECOMMENDATION

In this action Plaintiff RJSG Properties, LLC ("RJSG"), alleges violations of the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and Florida law in

connection with its purchase of a condominium unit in Destin, Florida, in 2004. Named as

Defendants are the condominium project's developer, Marbella Condominium Developers, LLC

("Marbella"); Marbella manager Steven P. DelGallo ("DelGallo"); real estate broker Jeffrey V.

Siren, personally and doing business as Beach Properties ("Siren"); and real estate salesman Michael

Iovieno ("Iovieno") (collectively, "Defendants").[1]  DelGallo has also filed a cross-claim for indemnification against Iovieno and Siren (Doc. 115).[2]  The district court referred this matter to the undersigned for all pretrial proceedings, including the issuance of preliminary orders, the conduct of necessary hearings, and—with respect to any dispositive motions—the filing of a report and recommendation containing proposed findings of fact and conclusions of law (Doc. 158).  *See* N.D. Fla. Loc. R. 72.2(E); 28 U.S.C. § 636(b)(1)(B)(C), and Fed. R. Civ. P. 72(b).  Presently before this court are DelGallo's motion for summary judgment pursuant to Fed. R. Civ. P. 56 on RJSG's RICO claims (Doc. 204), which Iovieno and Siren have joined (Docs. 220, 222); RJSG's "Motion and Application for Default Judgment against Marbella Condominium Developers, LLC and Incorporated Memorandum of Law" (Doc. 166); and DelGallo's "Amended Motion to Withhold Judgment on RJSG's Damages" (Doc. 188).[3]  As set forth below, the court recommends that DelGallo's motion for summary judgment on the RICO claims be granted, RJSG's motion for default judgment against Marbella be denied, and DelGallo's amended motion to withhold judgment on RJSG's damages be denied as moot.  The court further recommends that the district court exercise supplemental jurisdiction over RJSG's state law claims and DelGallo's cross-claim for indemnification and set this matter for trial.

## BACKGROUND

The following is taken from the district court's June 10, 2009, order denying DelGallo's and Siren's renewed motions to dismiss the amended complaint (Doc. 108).[4]

RJSG alleges the following facts in its amended complaint and RICO case statement.

---

[1]  The docket reflects that Robert D. Shelton ("Shelton") is a Defendant in this action.  Documents in the record, however, identify Shelton as one of RJSG's two principals as well as a former third-party Defendant, not a Defendant. The clerk shall be directed to correct this error by deleting Shelton from the docket as a Defendant.

[2]  Additionally, DelGallo filed a third-party complaint against RJSG principals Shelton and Gary Sims ("Sims") (Doc. 115; amended third-party complaint at Doc. 118), which he later voluntarily dismissed (Doc. 123).

[3]  DelGallo and Siren both proceed pro se at this time (Docs. 132, 212).  Iovieno is represented.  Marbella has not appeared.  Although DelGallo currently is unrepresented, the instant motions were drafted and submitted by counsel prior to his withdrawal.

[4]  Footnotes have been omitted.

In late 2002 or early 2003, DelGallo—manager of the then-undeveloped Marbella Condominiums (Marbella) in Destin—obtained construction financing [through Bank of America] for the erection of Marbella. Bank of America's financing agreement required that DelGallo pre-sell at least thirty-five units in Marbella before the bank would release the construction funds. By the fall of 2003, DelGallo had not sold the required units. According to the allegations, as a result, DelGallo authorized co-defendant Michael Iovieno (Iovieno) to buy various individuals' names and credit ratings for use as "sham purchasers" to convince investors of market interest in the property in an effort to persuade them to buy the units. Iovieno and Siren—a real estate broker with whom Iovieno registered his real-estate license—hired between ten and fifteen sham purchasers to enter into purchase agreements, which contained addenda protecting the sham purchasers from a binding deal on the units. Iovieno and Siren promised the sham purchasers $75,000 for the use of their names and credit histories, as well as a portion of the profits made if Iovieno and Siren sold units at an inflated price.

In December 2004, plaintiff and defendants Iovieno and Siren, as well as Ron Walters, a Florida realtor licensed under Siren's broker's license, met to discuss the purchase of a unit in Marbella. Walters told plaintiff that the "hot" Destin real-estate market would allow plaintiff to "flip" the unit and make a profit. That same month, plaintiff again met with Walters and Siren, who informed plaintiff that the price of $850,000 for unit 5C was below market and that plaintiff could sell the unit for more than $1 million in about a month's time. During the meeting, Iovieno and Siren told plaintiff that Kashif Shaukat (Shaukat), who[] plaintiff later learned was a sham purchaser, would assign to plaintiff Shaukat's contract to purchase unit 5C. In reliance on the representations, plaintiff paid $226,339.50 to Siren's company, Beach Properties, for the contract assignment.

In July 2008, RJSG filed a six-count complaint against Marbella Condominium Developers, LLC, DelGallo, Iovieno, Siren, and Siren's company, Beach Properties. Counts I, II, and III of the complaint are federal claims brought under the RICO Act. Counts IV and VI are common-law claims for rescission and fraud and fraud in the inducement respectively. Count V is a statutory claim for breach of professional duty under Fla. Stat. § 475.278. As relief, RJSG seeks damages (treble for the RICO claims), as well as injunction of defendants' practices, rescission of the contract, punitive damages, interest, costs, and attorneys' fees.

(Doc. 108 at 1–3).

After the district court denied the renewed motions to dismiss, RJSG filed its motion for default judgment against Marbella, and DelGallo filed his amended motion to withhold judgment

on RJSG's damages. After this court denied RJSG's motion to disqualify DelGallo's counsel (Doc. 171), it entered an amended final scheduling order giving the parties through February 15, 2010, in which to complete discovery (Doc. 178). DelGallo filed his motion for summary judgment on January 26, 2010, following which this court entered an order setting an advisement date of February 17, 2010, for the parties to submit all Rule 56 evidentiary materials (Doc. 210). RJSG responded to the motion for summary judgment on February 11, 2010 (Doc. 215), and with leave of court Siren replied pro se to RJSG's response (Doc. 243). RJSG has also responded to DelGallo's motion to withhold judgment on damages (Doc. 194). No response has been filed to RJSG's motion for default judgment against Marbella. As each of the three motions is ripe, the court now considers them, beginning with the motion for summary judgment.

## DISCUSSION

**Motion for Summary Judgment**

In his motion for summary judgment, which Iovieno and Siren have joined, DelGallo asserts that he is entitled to judgment in his favor on RJSG's RICO claims: Count I (brought pursuant to 18 U.S.C. § 1962(c)), Count II (brought pursuant to 18 U.S.C. § 1962(d)), and Count III (aiding and abetting RICO violations). DelGallo further contends that, absent the RICO claims, the court has no subject matter jurisdiction over RJSG's state law claims and thus it must dismiss the entire action. Below, the court sets out the legal standard for summary judgment, a summary of the parties' contentions, and its analysis.

Legal Standard

The summary judgment rule exists "to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Thus a motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 322. A factual dispute is "'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202

(1986). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Id.* at 248; Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted). Nevertheless, a general denial unaccompanied by any evidentiary support will not suffice. *See, e.g.*, Courson v. McMillian, 939 F.2d 1479 (11th Cir. 1991); Hutton v. Strickland, 919 F.2d 1531 (11th Cir. 1991). Furthermore, the court is not obliged to deny summary judgment for the moving party when the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *See* Anderson, 477 U.S. at 249. Indeed, the existence of a scintilla of evidence in support of the nonmovant's position is insufficient; the test is "whether there is [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Id.* at 252. The movant carries the initial burden of production, which can be met by showing that the nonmovant has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322; Fickling v. United States, 507 F.3d 1302, 1304 (11th Cir. 2007). The movant may support its motion with evidence negating the nonmovant's claim; alternatively, it "'simply may show []—that is, point[] out to the district court—that there is an absence of evidence to support the non-moving party's case.'" Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115–16 & n.2 (11th Cir. 1993) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)); *see also* Four Parcels, 941 F.2d at 1438 n.19 (noting that movant must point to specific portions of the record; simply stating that nonmovant cannot meet its burden at trial is insufficient). Once this initial burden is met, the nonmovant must "go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (citations and

quotations omitted).

The Parties' Contentions

DelGallo asserts entitlement to summary judgment on Counts I through III of the amended complaint on the ground there is no evidence to support these RICO claims; more particularly, DelGallo argues that the facts do not show he engaged in the alleged predicate acts, was involved in a pattern of racketeering, or operated an enterprise (Doc. 204 at 1).  DelGallo identifies three undisputed material facts in support of his motion for summary judgment: (1) he did not participate in the sale of the twelve Marbella units to The Formula, Inc., investors at issue in this case, whom RJSG refers to as the sham purchasers; (2) Bank of America was aware of the addenda to the purchase/sale agreements for the twelve units purchased by The Formula, Inc., investors, as it received complete copies of the documents; and (3) The Formula, Inc., purchasers were actual investors, not sham purchasers, who were bound under the purchase/sale agreements and addenda to close on their units if they did not assign their rights to secondary purchasers (*id.* at 2).  In support of the motion for summary judgment, DelGallo has submitted his own affidavit (Doc. 204-1), in which he describes Iovieno's role as salesman for the Marbella project, his own role as manager, and his lack of involvement in selling The Formula, Inc., units.  DelGallo has also filed the affidavit of attorney Richard Colbert ("Colbert"), who conducted the real estate closing on Unit 5C (Doc. 204-2). Colbert opines that the addenda to the purchase/sale agreement for Unit 5C created an absolute obligation on the part of the original purchaser to close if no assignment to another purchaser was made; he also states that he knows of one instance in which no assignment was timely made and the original purchaser was required to close on the unit.  DelGallo has also supplied Bank of America's response to his request for non-party production, which response consists of twelve purchase/sale agreements with addenda for the Marbella units that were sold to The Formula, Inc., investors (Doc. 204-3).

RJSG has filed a response in opposition to the motion for summary judgment (Doc. 215).[5]

---

[5] This court notes that in its response RJSG makes several references to the district court's order denying the renewed motions to dismiss (*see* Docs. 75, 80, 108), including the following:

The evidence gathered to-date and presented to this Court in opposition to Defendant Del[G]allo's

mirror-image motions to dismiss includes facts that were sufficient for Judge William Stone to find that Defendants Siren and Iovieno likely perpetrated civil theft on purchasers in a parallel situation to Plaintiff.

(Doc. 215 at 1–2).

[T]his Court entered its Order [Document 108] after reviewing sworn testimony in an injunction hearing before Okaloosa County Circuit Judge William Stone. All of the Defendants except Defendant Del[G]allo testified at that hearing. This Court has considered many, many affidavits as well.

(*Id*. at 5).

As this Court has previously found, there is evidence that the Defendants engaged in racketeering activity as defined in RICO. That Defendant Del[G]allo now couches his Motion to Dismiss as a Motion for Summary Judgment is a distinction without a difference.

(*Id*. at 5–6).

Again, this Court has reviewed a considerable amount of evidence in the *Hammer v. Siren* case. On the basis of that substantial record, this Court found Plaintiff's RICO narrative to be credible. [Again, Document 108]. Now, Defendant Del[G]allo refiles his Motion to Dismiss as a Motion for Summary Judgment . . . .

(*Id*. at 12).

The record reflects that the state case referenced above by RJSG is Hammer v. Siren, Case No. 2006-CA-5317, an action brought in the Circuit Court of the First Judicial Circuit in and for Okaloosa County, Florida. This court noted in its order denying RJSG's motion to disqualify counsel that the record reflects the case "pertained to Hammer and Fuhrman's purchase of another Marbella unit under circumstances purportedly similar to those alleged in this case. In Hammer the plaintiffs asserted claims under theories of breach of statutory duty, fraud, civil theft, and constructive trust against Siren and Beach Properties" (Doc. 171 at 4). The court further noted that the record "reflects that in Hammer the state court judge entered an order enjoining the release of certain escrow funds. The defendants challenged the injunction, but [their counsel] successfully defended it on appeal. Reportedly, the parties ultimately settled this lawsuit" (*id*., n.6).

With respect to the quotations above from RJSG's response to the motion for summary judgment, contrary to RJSG's apparent understanding, the district court in its June 10, 2009, order, did not make findings of *fact* based on any evidence RJSG may have submitted in connection with its response to the first motions to dismiss/for more definite statement filed by DelGallo and Siren (*see* Docs. 33, 37, 39, 43). This court notes that these initial motions were granted, only to the extent that RJSG was directed to file a RICO case statement (Doc. 53). With respect to the renewed motions to dismiss, in denying the motions the district court simply indicated that it found RJSG's *allegations* in its amended complaint and case statement to be sufficient, under the relevant standards, to withstand dismissal. No evidence was submitted in connection with RJSG's response to the renewed motions (Doc. 90), and the district court did not indicate in its order that it reviewed or relied upon any evidence.

As RJSG should well know and the pro se parties are informed, the standards applicable to motions for summary judgment and motions to dismiss are significantly different; additionally, while extrinsic evidence may be considered on a motion for summary judgment it ordinarily is not on a motion to dismiss. Indeed, although a plaintiff may rest on its pleadings at the motion to dismiss stage, it must do more in order to withstand summary judgment scrutiny. *See, e.g.*,

Without directly responding to DelGallo's contentions regarding the elements required to establish a RICO claim, RJSG disputes the three facts which DelGallo submits are uncontroverted. First, RJSG argues that DelGallo in fact participated in obtaining the services of The Formula, Inc., and may not avoid liability in this case through deliberate ignorance of the unlawful actions of Siren and Iovieno (*id.* at 3, 5–6). Second, RJSG contends, DelGallo's evidence showing that Bank of America received copies of the purchase/sale agreements with addenda signifies little. Not only was DelGallo's document production request to Bank of America more limited than RJSG's but also the Bank has not yet responded to RJSG's request. Moreover, RJSG argues that although the Bank may or may not have been aware of the contents of the purchase/sale agreements with addenda, if the Bank "actually sanctioned the use of a contract not approved by Florida regulators then [it too] could be part of the RICO conspiracy" (*id.* at 9–10). Third, RJSG submits, the terms of the addenda exposed The Formula, Inc., purchasers to no real risk and thus there was no "lawful, arms-length market" (*id.* at 5–6). According to RJSG, the addenda to the purchase/sale agreements contained significant concessions for The Formula, Inc., investors, "to the point that the[se] sham purchasers would not [otherwise] have taken the risk to purchase a Marbella unit . . . ." (*id.* at 4). RJSG also contends that none of the Defendants "disclosed any of the Addendums to any purchaser of a contract," even though the addenda were part of the contract being purchased by the secondary buyers (*id.*). Moreover, RJSG asserts, DelGallo's motion for summary judgment is premature because at the time the motion was filed discovery had not yet been completed.[6]

In support of its response, RJSG refers to excerpts taken from the complete transcript of

---

LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835 (11th Cir. 1998) ( "To defeat a motion for summary judgment, the nonmoving party may not rely on mere allegations" but "must raise significant probative evidence that would be sufficient for a jury to find for that party") (citations and internal quotation marks omitted). Thus, although this court would agree that in the instant motion for summary judgment DelGallo at times strays into pleading issues (*see, e.g.*, Doc. 204 at 9–10), it nevertheless notes that there is far more than a "distinction without a difference" involved between this motion and the prior motions to dismiss.

[6] RJSG supplied to chambers hard copies of what it describes as its outstanding discovery items, which include requests for admissions, requests for production of documents, and interrogatories. As RJSG did not file these items with the clerk as part of its response, however, they are not part of the electronic record. To create a complete record, the court will direct the clerk to docket the copies of these discovery requests as a supplemental exhibit to RJSG's response to the motion for summary judgment.

DelGallo's deposition taken in connection with the *Hammer* litigation (Doc. 215-1); the affidavit of a paralegal employed by RJSG's counsel who outlines his contacts with Bank of America in pursuit of RJSG's discovery requests (Doc. 215-2); an opinion letter written by real estate broker William G.P. Kreuser ("Kreuser") on the legal implications of the terms of the addenda to the purchase/sale agreements and RJSG's asserted damages (Doc. 215-3); and transcript excerpts of testimony given by Colbert before the court in the *Hammer* case (Doc. 215-4).[7]

In reply to RJSG's response, Siren disputes what he characterizes as RJSG's contention that "the agreement between Beach Properties and [RJSG] was never executed or Beach Properties['] interest disclosed" (*id.* at 2). According to Siren, in fact "[f]ull disclosure [of the assignment from Beach Properties to Sims, LLC] was made . . ." *(id.)*.[8]

<u>Analysis</u>

The court first addresses RJSG's contention that as of February 11, 2010, when it submitted its response to the motion for summary judgment filed January 26, 2010, it had not yet received responses to all of its discovery requests from Defendants and others. According to RJSG, DelGallo promised to supply his response by February 11, 2010,[9] a non-party had until February 12, 2010, in which to respond, and Bank of America agreed to provide its response by February 26, 2010 *(see* Doc. 215 at 2, 5, 13; Doc. 215-2). Without citing legal authority in support, RJSG suggests that the

---

[7]  Northern District of Florida Local Rule 56.1(A) requires both the summary judgment movant(s) and nonmovant to "reference the appropriate deposition, affidavit, interrogatory, admission, or other source of the relied upon material fact by page, paragraph, number, or other detail sufficient to permit the court to readily locate and check the source." N.D. Fla. Loc. R. 56.1(A). Broad or nonspecific references to evidence filed in connection with summary judgment or other motions (*see, e.g.,* n.5, *supra*, and Doc. 215 at 2, n.1; 4, 7), do not satisfy the requirements of Rule 56.1(A). <u>Accordingly, only where the parties have properly directed the court to a source has the court reviewed the material and considered the reference.</u>

[8]  In support of this argument Siren submits the executed assignment signed by Siren and Sims for Unit 5C (*see* Doc. 243, att.). In his reply Siren makes numerous other arguments, none supported by affidavit or pointing to any evidence, including that RJSG has falsely represented the nature of and determinations made in the <u>Hammer</u> case; that bulk sales are an accepted and legal way of selling real estate; that The Formula, Inc., investors were not sham purchasers but real investors; and that Kreuser's opinion relies on RJSG's false allegations and employs a defective methodology (Doc. 243).

[9]  RJSG states that, given the current pro se status of DelGallo, it "is expecting difficulties in obtaining all discovery due and owing to Plaintiff" (Doc. 215 at 5).

motion for summary judgment should therefore be denied as prematurely filed.

Under Eleventh Circuit precedent, the court ordinarily should not grant a motion for summary judgment until the party opposing the motion has had an adequate opportunity for discovery. *See, e.g.,* Reflectone, Inc. v. Farrand Optical Co., 862 F.2d 841, 843–44 (11th Cir. 1989); Cowan v. J.C. Penney Co., 790 F.2d 1529, 1532 (11th Cir. 1986). Indeed, the Eleventh Circuit has stated that "[t]he law in this circuit is clear: the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion." Jones v. City of Columbus, Ga., 120 F.3d 248, 253 (11th Cir. 1997). Especially where "the documents or other discovery sought would be relevant to the issues presented by the motion for summary judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials." Snook v. Trust Co. of Ga. Bank of Savannah, N.A., 859 F.2d 865, 870 (11th Cir. 1988) (citation omitted). Thus, summary judgment may not be proper until after the district court rules on any outstanding discovery motions. Vining v. Runyon, 99 F.3d 1056, 1058 (11th Cir. 1996) (per curiam). Pursuant to Fed. R. Civ. P. 56(f), "[t]he party opposing summary judgment may move the court to permit the discovery necessary to oppose the motion." Reflectone, Inc., 862 F.2d at 843. Although in the Eleventh Circuit a party opposing a motion for summary judgment is not required to file a Rule 56(f) affidavit, he nevertheless "bears the burden of calling to the district court's attention any outstanding discovery." Snook, 859 F.2d at 871 (citation omitted).

Here, RJSG has not filed a motion to compel production of discovery from any Defendant (or other entity) or for sanctions for a Defendant's failure to cooperate in discovery. It also has not filed a motion pursuant to Rule 56(f), much less an affidavit. In short, prior to the close of discovery on February 15, 2010, or the summary judgment advisory date of February 17, 2010, RJSG filed nothing to bring to the court's attention its assertion that discovery remained outstanding, other than its instant response filed just a few days prior, on February 11, 2010. Even to date RJSG has not

asked the court to take any action on this assertion.[10]  Moreover, RJSG has not filed a motion to extend the discovery period beyond February 15, 2010; a motion to extend the time for filing its response to the motion for summary judgment; or a motion to supplement its response to accommodate any anticipated additional discovery materials.  Additionally, in its response RJSG apparently addresses only two matters as to which the requested discovery might be relevant to the issues presented by the motion for summary judgment (*see* Doc. 215 at 4, 9), and in neither instance—nor with respect to any other matters—does RJSG clearly explain how the lack of the requested information seriously harms or prejudices its case.

RJSG could have brought the asserted outstanding discovery matters to the court's attention by filing a timely motion to compel or other appropriate motion on which the court might have taken corrective action, but RJSG failed to do so.  *See* Snook, 859 F.2d at 871.  Furthermore, the court concludes that RJSG had ample opportunity and time to complete discovery prior to the court's consideration of the instant motion, especially given that the amended initial scheduling order issued on June 11, 2009 (Doc. 109), established October 9, 2009, as the discovery deadline—and that deadline was later extended to February 15, 2010.[11]  *See* Jones, 120 F.3d at 253.  The court thus is unpersuaded by RJSG's argument that summary judgment should now be denied due to outstanding discovery.  Furthermore, under the specific circumstances described above, the court believes that summary judgment review should not be delayed to permit additional enlargement of the discovery period and the completion of discovery, which is any event is a remedy not requested by RJSG. Accordingly, the court proceeds to considering the motion on the summary judgment evidence and argument of record.

The RICO Act provides a private civil remedy to recover treble damages to "[a]ny person injured in his business or property by reason of a violation" of the substantive provisions contained

---

[10]  On April 16, 2010, RJSG filed a response in opposition to Siren's motion for leave to file a reply (Doc. 234). RJSG states in the response that it planned to file motions to compel discovery and for sanctions against Siren and Iovieno the following week.  No such motions have been filed.

[11]  The deadline was extended after counsel advised the court that they had not engaged in discovery, as directed in the district court's amended initial scheduling order, as they awaited resolution of RJSG's motion to disqualify counsel.  In the interest of fairness to the attorneys' clients, the court enlarged the discovery period to February 15, 2010 (Doc. 178).

in § 1962 of the RICO Act. 18 U.S.C. § 1964(c). Count I of the amended complaint is a substantive RICO claim brought pursuant to 18 U.S.C. § 1962(c) against all Defendants. Section 1962(c) states that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). The Eleventh Circuit has instructed that a plaintiff bringing a RICO claim under § 1962(c) "must satisfy four elements of proof: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Williams v. Mohawk Industries, Inc., 568 F.3d 1350, 1355 (11th Cir. 2009) (citations omitted); *see also* Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985).[12]  Because it concludes that an assessment of the "pattern of racketeering" requirement is dispositive of Count I, the court addresses this requirement without considering whether Defendants engaged in an enterprise within the meaning of the RICO statute.

The Supreme Court has instructed that a plaintiff can establish a "pattern of racketeering activity" by showing that: 1) the defendant committed two or more predicate acts within a ten-year period, 2) those predicate acts are related to each other, and 3) the predicate acts illustrate continuous criminal conduct. H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 237–44, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989); Langford v. Rite Aid of Alabama, Inc., 231 F.3d 1308, 1311–12 (11th Cir. 2000). Predicate acts may include "any act which is indictable under a lengthy list of criminal offenses, including the federal statutes prohibiting mail and wire fraud." Langford, 231 F.3d at 1312. To be related, the RICO predicate acts must have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise be interrelated by distinguishing characteristics. *See* United States v. Browne, 505 F.3d 1229, 1258 (11th Cir. 2007). There are two types of continuity: "closed-ended" and "open-ended." H.J. Inc., 492 U.S. at 241. The former type

---

[12] Although not at issue here, a civil RICO plaintiff must also satisfy the requirements of 18 U.S.C. § 1964(c), which provides "that '[a]ny person injured in his business or property by reason of' RICO's substantive provisions has the right to 'recover threefold the damages he sustains. . . .'" Mohawk, 465 F.3d at 1282 (quoting, with alterations, 18 U.S.C. § 1964(c)). "Thus, under § 1964(c), civil RICO claimants, such as the plaintiffs here, must show (1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation." *Id*. at 1282–83.

refers "to a closed period of repeated conduct," and the latter type "to past conduct that by its nature projects into the future with a threat of repetition." *Id*.

In ruling on the renewed motions to dismiss in this case, the district court found that RJSG's allegations—which concerned violations of 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), and § 1344 (financial institution or bank fraud)—were sufficient to show at least two related predicate acts of racketeering and a threat of continuing activity (Doc. 108 at 6–7). Thus, the district court concluded that RJSG had adequately alleged a pattern of racketeering activity (*id.* at 7). At this summary judgment stage of the proceedings, however, DelGallo submits there is no evidence to show he engaged in the racketeering predicate acts required for a RICO claim or that a threat of continuing activity exists (Doc. 204 at 9–11). More specifically, according to DelGallo there is no factual support "for the notion that the activities connected with the sale of [The Formula], Inc. units in Marbella can form the predicate for a RICO claim"; rather, "the alleged RICO predicate acts were part and parcel of a single, otherwise lawful transaction, the sale of units at the Marbella Condominium" (*id.* at 10, 11). Moreover, he argues, "the twelve Formula, Inc. purchase agreements were a one time event[;] there is no evidence that the activity is ongoing or will continue into the future" (*id.* at 11). In support, DelGallo points to specific allegations made by RJSG in its case statement concerning the financing and sale of Marbella units (Doc. 204 at 9–10) and statements from his own affidavit (*id.* at 11). This court is satisfied that in arguing there is no evidence to support RJSG's allegations that the conduct involved in the sale of the Marbella units to The Formula, Inc., investors constitutes RICO predicate acts, or that the alleged criminal activity is ongoing—and pointing to the relevant portions of RJSG's pleadings—DelGallo has met his summary judgment burden on these issues. *See* <u>Fitzpatrick</u>, 2 F.3d at 1115–16 & n.2; <u>Four Parcels</u>, 941 F.2d at 1438 n.19. The burden thus shifts to RJSG to "demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>Clark v. Coats & Clark, Inc,</u>, 929 F.2d 604, 608 (11th Cir. 1991).

As the district court outlined in its order denying the renewed motions to dismiss, RJSG alleges that "between summer 2004 and the present, DelGallo, Iovieno, and Siren mailed marketing materials to potential purchasers in several states and made consistent use of telephone contacts,

thereby using the mail and wires with the intent to promote or carry on a scheme to defraud . . ." (Doc. 108 at 6); additionally, RJSG alleges that "by providing fraudulent contracts to Bank of America—which relied on the contracts as a true statement of market value—defendants committed bank fraud" (*id.*). This court considers whether RJSG has shown that a genuine issue of material fact exists with respect to the requirement that Defendant committed two or more predicate acts by considering the elements of each of the three alleged offenses. "The elements of mail and wire fraud are: (1) intentional participation in a scheme to defraud, and (2) the use of the interstate mails or wires in furtherance of that scheme." United States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009). Mail fraud "requires proof of a specific intent to defraud or deceive." Club Car, Inc. v. Club Car (Quebec) Import, Inc., 362 F.3d 775, 783 (11th Cir. 2004). To establish bank fraud it must be proven that "(1) a scheme existed to obtain money, funds, or credit in the custody of a federally insured financial institution; (2) the defendant participated in the scheme by means of false pretenses, representations, or promises, which were material; and (3) the defendant acted knowingly." United States v. Williams, 390 F.3d 1319, 1324 (11th Cir. 2004).

The court concludes that none of the evidence cited by RJSG in connection with its response to the motion for summary judgment is sufficient to establish a jury question on whether Defendants engaged in wire fraud, mail fraud, and/or bank fraud.[13] RJSG's cited evidence includes excerpts from DelGallo's full deposition that was taken in connection with the *Hammer* litigation (Doc. 215 at 2–3, citing Doc. 215-1); these excerpts, however, seemingly pertain only to RJSG's argument that DelGallo should be held liable for the tortious or criminal acts of his employees and to dispute his contention that he did not participate in the sale of the twelve Marbella units to The Formula, Inc., investors. They do not create a genuine issue of fact as to whether DelGallo or any other Defendant

---

[13] As noted, RJSG asserts that Defendants committed financial institution or bank fraud by providing fraudulent contracts to Bank of America, which relied on the contracts as a true statement of the market value of the Marbella units. To the extent RJSG's allegation implies that Bank of America, not RJSG, was directly harmed by Defendants' conduct, it may be that RJSG would not have standing to rely on bank fraud as a RICO predicate act. Ward v. Nierlich, 617 F. Supp. 2d 1226, 1234 (S.D. Fla. 2008) ("financial institution fraud cannot serve as a predicate act for [] RICO violations."). For the purpose of the instant discussion, however, the court does not consider the issue of standing and this alleged predicate act, a matter not raised or addressed by the parties. Additionally, for the purpose of this discussion the court does not address whether the alleged predicate acts are "related" or "continuous" within the meaning of the RICO statute. *See* Browne, 505 F.3d at 1258; H.J. Inc., 492 U.S. at 241.

engaged in a scheme to defraud.  The same is true with regard to RJSG's references to its three other exhibits:  the paralegal's affidavit concerning efforts to obtain discovery from Bank of America (*id.* at 4, citing Doc. 215-2); Kreuser's opinion that the Formula, Inc., investors were exposed to no actual risk in purchasing their units due to special concessions in the addenda that were not disclosed to subsequent buyers[14] and that RJSG sustained damages as great as $465,000.00, plus other costs (*id.*, citing Doc. 215-3); or Colbert's testimony before the <u>Hammer</u> court that the addenda to the purchase/sale agreements were not disclosed to the secondary buyers (*id.*, citing Doc. 215-4).  Thus RJSG has failed to come forward with evidence creating a genuine issue of fact as to whether Defendants intentionally participated in a scheme to defraud.

Furthermore, as to the crimes of mail fraud and wire fraud, RJSG fails to point to any summary judgment evidence showing that the interstate mails or wires were used in furtherance of the scheme to defraud.  Indeed, although it has alleged such use (*see* Doc. 56 at 6–7, 9), RJSG has failed to identify evidence at summary judgment which shows that DelGallo, Iovieno, and Siren mailed marketing materials to potential purchasers in several states or made consistent use of telephone contacts or used telephone calls and facsimile transmissions to arrange the deal between RJSG and Marbella or the real estate closing.  *See* <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 553 U.S. 639, 128 S. Ct. 2131, 2138, 170 L. Ed. 2d 1012 (2008) ("any mailing that is incident to an essential part of the scheme satisfies the mailing element"); <u>United States v. Evans</u>, 473 F.3d 1115, 1118 (11th Cir. 2006) ("A transmission is for the purpose of executing the scheme if it is incident to an essential part of the scheme.") (citation and internal quotation marks omitted).  Nor, with respect to the alleged predicate offense of bank fraud, has RJSG submitted any evidence to counter DelGallo's exhibit which shows that Bank of America received full copies of the purchase/sale agreements, including the addenda, for the Marbella units sold to The Formula, Inc., purchasers (*see* Doc. 206-4). While, as RJSG submits, this evidence does not address the Bank's actual knowledge or appreciation of the contents of the documents, it does suggest, at least in connection with submitting the contracts, that Defendants did not make false representations to the Bank.  <u>Mohawk</u>, 390 F.3d at 1324.

---

[14] In any event, this issue, which is addressed both by Kreuser and Colbert, appears to the court not to involve a matter of fact for a jury to determine but rather a matter of law for the court to decide.

The court therefore concludes that RJSG has failed to show that DelGallo, or any of the other Defendants, committed the requisite two predicate offenses necessary to establish a RICO claim. More specifically, RJSG has not shown that Defendants' alleged conduct involving the sale and financing of the Marbella units qualifies as a predicate act of mail, wire, or bank fraud for purposes of establishing a RICO pattern of racketeering activity. Because RJSG has failed to meet its burden on summary judgment of coming forward with evidence from which a reasonable factfinder could conclude that a pattern of racketeering activity took place, as is necessary to support a RICO cause of action, summary judgment in DelGallo's favor, and in favor of Siren and Iovieno, on Count I of the amended complaint is appropriate.

Count II, pleaded in the alternative to Count I, is a conspiracy claim under RICO brought pursuant to § 1962(d) against all of the Defendants. A party may be liable for RICO conspiracy even if he is not liable for the substantive RICO offense. *See* Salinas v. United States, 522 U.S. 52, 62–64, 118 S. Ct. 469, 476–77, 139 L. Ed. 2d 352 (1997); United States v. Shenberg, 89 F.3d 1461, 1479 (11th Cir. 1996). Nevertheless, to support a claim of a RICO conspiracy a plaintiff must show an illegal agreement to violate a substantive provision of the RICO statute. "'To be guilty of conspiracy, . . . parties must have agreed to commit an act that is itself illegal—parties cannot be found guilty of conspiring to commit an act that is not itself against the law.'" Jackson v. BellSouth Telecomm., 373 F.3d 1250 (11th Cir. 2004) (citing United States v. Vaghela, 169 F.3d 729, 732 (11th Cir. 1999)); *see also* Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183, 1199 (11th Cir. 2004) ("If the underlying cause of action is not viable, the conspiracy claim must also fail.").

In his motion for summary judgment, DelGallo contends there is no evidence to support RJSG's allegation that Defendants conspired to artificially inflate the real estate market through the bulk sale of twelve units to The Formula, Inc., investors, including with respect to Defendants' alleged meetings and communications concerning the sale. The court concludes that DelGallo has met his summary judgment burden, and thus that the burden now shifts to RJSG to show that a genuine issue for trial exists. As discussed above, RJSG's substantive RICO claim fails. In some circuits, this would be sufficient to conclude that its civil RICO conspiracy claim likewise fails. *See* American Dental Ass'n v. Cigna Corp., __ F.3d ____, 2010 WL 1930128 at *10, n.6 (11th Cir. May

14, 2010) (citing cases).  The Eleventh Circuit, however, has not expressly adopted such a position.
*Id.*  Rather, in this circuit, as noted in <u>American Dental Ass'n</u>, based on the holding in <u>Jackson v.</u>
<u>BellSouth Telecomm.</u>, 373 F.3d 1250 (11th Cir. 2004),[15] the rule appears to be that only where the
RICO claim fails "and the conspiracy count does not contain additional allegations" does the
conspiracy claim necessarily fail.  <u>Rogers v. Nacchio</u>, 241 Fed. App'x. 602, 609 (11th Cir. 2007)
(characterizing holding in <u>Jackson</u>).   Here, the conspiracy count does not contain additional
allegations that are separate from the allegations in the substantive RICO count.  Nor, for purposes
of summary judgment, has RJSG come forward with any evidence of a conspiracy that would permit
it to defeat DelGallo's motion.  The court therefore concludes that DelGallo, along with Siren and
Iovieno, is entitled to summary judgment on Count II of the amended complaint.

Count III of the amended complaint is a RICO claim for aiding and abetting against Marbella
and DelGallo.  One who aids and abets two predicate acts can be civilly liable under RICO.  <u>Cox v.</u>
<u>Adm. U.S. Steel & Carnegie</u>, 17 F.3d 1386, 1410 (11th Cir. 1994) (citing <u>Petro-Tech, Inc. v. Western</u>
<u>Co. of North America</u>, 824 F.2d 1349, 1356 (3d Cir. 1987)).  To establish civil liability for aiding
and abetting, a plaintiff must show:  "(1) that the defendant was generally aware of the defendant's
role as part of an overall improper activity at the time that he provides the assistance; and (2) that
the defendant knowingly and substantially assisted the principal violation."  *Id.* (citations omitted).

RJSG's aiding and abetting theory appears to be that Iovieno and Siren engaged in a scheme
to defraud, a scheme which Marbella and DelGallo knew, or should have known, about and
facilitated.  As discussed, RJSG has failed to provide evidence sufficient to create a jury question
on the issue of whether Defendants committed two predicate acts for purposes of RICO liability.
Moreover, to prevail under an aider and abettor theory, RJSG must show, among other things, that
DelGallo acted with the requisite scienter:  that he in fact knew of the commission of the mail, wire,
and/or bank fraud and acted with the intent to facilitate it.  *See* <u>Jaguar Cars, Inc. v. Royal Oaks Motor</u>

---

[15]  In <u>Jackson</u>, the Eleventh Circuit affirmed the dismissal of a RICO conspiracy claim because the complaint
failed to allege a substantive RICO claim.  The court emphasized, however, that "the RICO conspiracy [claim] add[ed]
nothing" because it "simply conclude[d] that the defendants 'conspired and confederated' to commit conduct which in
itself does not constitute a RICO violation."  <u>Jackson</u>, 373 F.3d at 1269.

Car Co., 46 F.3d 258, 270 (3d Cir. 1995). As RJSG has come forward with no evidence demonstrating that an issue of material fact exists on the issue of DelGallo's (or Marbella's) knowledge of or substantial assistance in the commission of the alleged predicate acts, summary judgment in favor of DelGallo on Count III of the amended complaint is warranted.

For all of the foregoing reasons, the court recommends that DelGallo's motion for summary judgment on Counts I through III of the amended complaint, which motion Siren and Iovieno have joined, be granted.

## Motion for Default Judgment

RJSG moves for entry of default judgment against Marbella, which has failed to appear or defend. A clerk's default against Marbella has been entered (Doc. 13).

After a default has been entered pursuant to Rule 55(a), in order to determine whether the moving party is entitled to default judgment pursuant to Rule 55(b) the court must review the sufficiency of the complaint and its underlying substantive merits. Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1370 n.41 (11th Cir. 1997). In defaulting, a defendant "admit[s] the plaintiff's well-pleaded allegations of fact" for purposes of liability. Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987). In this case, as previously discussed, RJSG's RICO claims survived Defendants' motions to dismiss upon a finding by the district court that the allegations of the amended complaint had been sufficiently pleaded (Doc. 108). The district court made no findings with respect to whether RJSG's claims under Florida law were well-pleaded.

Recognizing that Marbella may be subject to entry of default judgment against it for its failure to defend, the court nevertheless is mindful that "in certain circumstances a default judgment is inappropriate if it results in inconsistency among judgments." Marshall & Ilsley Trust Co. v. Pate, 819 F.2d 806, 811 (7th Cir. 1987). According to the rule first stated in Frow v. De La Vega, 15 Wall. 552, 554, 82 U.S. 552, 21 L. Ed. 60 (1872), where a case involves multiple, jointly liable defendants, judgment should not be entered against a defaulting defendant before the case has been decided on the merits as to the remaining defendants. And, if the case is ultimately decided against the plaintiff on the merits, it should "be dismissed as to all the defendants alike—the defaulter as

well as the others." *Id.*; *see also* <u>Hunt v. Inter-globe Energy, Inc.</u>, 770 F.2d 145, 147 (10th Cir. 1985) ("[J]ust as consistent verdict determinations are essential among joint tortfeasors, consistent damage awards on the same claim are essential among joint and several tortfeasors."). The rule against imposing default judgment against jointly liable defendants also extends to situations "where several defendants have closely related defenses." 10A Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 2690 (3d ed. 1998 & Supp. 2009); *see also* <u>Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc.</u>, 740 F.2d 1499, 1512 (11th Cir. 1984) (noting that "when defendants are similarly situated, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits."); <u>Neilson v. Chang ( In re First T.D. & Inv., Inc.)</u>, 253 F.3d 520, 532 (9th Cir. 2001) (extending <u>Frow</u> to defendants who have closely related defenses or are otherwise similarly situated, even if not jointly and severally liable, so as to avoid inconsistent judgments against multiple defendants). According to Wright, Miller and Kane, the "key" aim in deciding the application of <u>Frow</u> to individual cases is recognizing "that the <u>Frow</u> principle is designed to apply only when it is necessary that the relief against the defendants be consistent. If that is not the case, then a default against one defendant may stand, even though the remaining defendants are found not liable." 10A Wright, Miller & Kane, § 2690.

In this case, as to each of Counts I, II, and III of the amended complaint, RJSG seeks an award of damages against all of the Defendants jointly and severally (*see* Doc. 19 at 14, 16, 19). Moreover, DelGallo and Marbella appear to be similarly situated. RJSG alleges the same wrongful acts and legal theory against Marbella as it does against DelGallo—Marbella's manager—and Marbella's defenses to the RICO counts should align with DelGallo's. *See* <u>Bastien v. R. Rowland & Co.</u>, 631 F. Supp. 1554, 1561 (E.D. Mo. 1986) (parties are not similarly situated and a default judgment does not establish inconsistent judgments if the liability of the defaulting party is based on independent wrongful acts or a legal theory distinct from the one under which the answering party prevailed), *aff'd without opinion*, 815 F.2d 713 (8th Cir. 1987). It appears to this court that permitting entry of default judgment against Marbella while finding in favor of the other Defendants on the merits of RJSG's three RICO claims would result in inconsistent judgments. Accordingly,

at least with respect to Counts I through III, this court concludes that <u>Frow</u> should apply to preclude the entry of default judgment against Marbella. *See* <u>Gulf Coast Fans, Inc.</u>, 740 F.2d at 1512 (indicating that it would be "incongruous and unfair" to permit the plaintiff to collect a judgment against the defaulting defendant on a contract when a jury, in a suit against another defendant under the same contract, had found that the plaintiff itself had breached that contract); 10 James Wm. Moore et al., <u>Moore's Federal Practice</u> § 55.25 (3d ed. 2006) ("When multiple defendants are similarly situated, even if the liability asserted against them is not joint, default judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits."); <u>Jones v. Luthi</u>, 586 F. Supp. 2d 595, 617 (D.S.C. 2008) (applying <u>Frow</u> to deny default judgment as to non-answering defendants).

Additionally, there is authority for applying the <u>Frow</u> rule on summary judgment. *See, e.g.,* <u>Lewis v. Lynn</u>, 236 F.3d 766, 768 (5th Cir. 2001) (citing <u>Gulf Coast Fans, Inc.</u>, 740 F.2d at 1512, in holding that non-answering defendants should be permitted to benefit from the favorable ruling on the appearing party's summary judgment motion because it would be "'incongruous' and 'unfair' to allow some defendants to prevail, while not providing the same benefit to similarly situated defendants"); <u>Bastien</u>, 631 F. Supp. at 1561 ("summary judgment in this case therefore accrues to the benefit of [defaulting defendant] as well as to those parties who have actively defended against plaintiffs' claims. Any other result would indeed be inconsistent and unsupportable."); <u>Jones</u>, 586 F. Supp. at 617 (applying <u>Frow</u> to grant summary judgment in favor of non-answering defendants). *See also* <u>United States v. Peerless Ins. Co.</u>, 374 F.2d 942, 945 (4th Cir. 1967); <u>Davis v. National Mortgagee Corp.</u>, 349 F.2d 175 (2d Cir. 1965). Because this court concludes that it would be "incongruous" and "unfair" to allow DelGallo, Iovieno, and Siren to prevail on RJSG's RICO claims, while not providing the same benefit to the similarly situated Marbella, it recommends that summary judgment likewise be entered in Marbella's favor on Counts I through III of the amended complaint. *See* <u>Gulf Coast</u>, 740 F.2d at 1512.

Counts IV through VI of the amended complaint are RJSG's state law claims for rescission, breach of professional duty, and fraud/fraud in the inducement. As noted, a defaulting defendant is

deemed to have admitted the complaint's well-pleaded allegations of fact for purposes of liability. Buchanan, 820 F.2d at 361. Although in its motion for entry of default judgment against Marbella RJSG relies on the district court's findings on its RICO claims, it fails to identify the elements of each of its three state law causes of action or show that the well-pleaded allegations of those claims establish each required element. Thus, to the extent Counts IV through VI are against Marbella, the court concludes that default judgment in RJSG's favor against this Defendant is not appropriate at this time. RJSG should be permitted, however, to renew its motion for default judgment as to Counts IV through VI and provide appropriate briefing.

**Amended Motion to Withhold Judgment on RJSG's Damages**

With respect to RJSG's motion for default judgment against Marbella, DelGallo moves to withhold judgment on the amount of damages attributable to the RICO claims "as that issue will be contested as part of DelGallo's defense" (Doc. 188 at 1). In light of the foregoing recommendation to grant summary judgment in favor of all Defendants on the RICO claims and deny the motion for default judgment against Marbella, this motion may be denied as moot.

**Supplemental Jurisdiction**

One matter remains for the court to address: whether, as DelGallo maintains, with the RICO claims dismissed from this action the court lacks subject matter jurisdiction over RJSG's state law claims, thus requiring dismissal of the entire action.

A federal court has supplemental jurisdiction over state law actions "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 742–43 (11th Cir. 2006). A court has discretion to exercise its jurisdiction over such actions even after the federal claims giving rise to original jurisdiction have been dismissed. 28 U.S.C. § 1367(c); Pintando v. Miami-Dade Housing Agency, 501 F.3d 1241, 1242–43 (11th Cir. 2007). In this case, with respect to the state law claims—for rescission, fraud/fraud in the inducement, and breach of professional duty—RJSG relies on the same facts that support its RICO claims. The court therefore concludes that it retains the power to hear

the state law claims. <u>Baggett v. First Nat'l Bank of Gainesville</u>, 117 F.3d 1342, 1352 (11th Cir. 1997). Having concluded that it has the power to hear RJSG's state claims, the court must next determine whether, in its discretion, it should retain jurisdiction over those claims. <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 1138–39, 16 L. Ed. 2d 218 (1966); <u>Baggett</u>, 117 F.3d at 1352. The Eleventh Circuit has instructed that "once a court decides that it has power to exercise supplemental jurisdiction under § 1367(a), then the court should exercise that jurisdiction, unless § 1367(b) or (c) applies to limit the exercise." <u>Baggett</u>, 117 F.3d at 1352 (citing <u>Palmer v. Hospital Authority of Randolph County</u>, 22 F.3d 1559 (11th Cir. 1994)). In the instant case, § 1367(c) will apply if the district court dismisses all claims over which it had original jurisdiction. <u>Id.</u> at 1353. Section 1367(c) establishes four factors a court should consider in declining to exercise supplemental jurisdiction: (1) the existence of a novel or complex issue of state law; (2) the predominance of state law issues over the claims giving rise to original jurisdiction; (3) the dismissal of all claims over which the court has original jurisdiction; and (4) other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). Additionally, where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. <u>See</u> <u>Baggett</u>, 117 F.3d at 1353.

This court concludes that, on balance, the § 1367(c) factors and other considerations favor retaining jurisdiction over RJSG's state law claims, even taking into account that the district court may dismiss the original jurisdiction claims. The state law claims do not appear to present novel or complex issues of state law. Nor do issues of state law appear to predominate over the RICO claims that gave rise to original jurisdiction. Additionally, issues of fairness appear to be implicated. RJSG initiated this action on July 15, 2008 (Doc. 1). Assuming that the state law claims arose in December 2004 at the time RJSG entered into the purchase/sale agreement for Unit 5C, the court is concerned that RJSG could be barred from bringing these claims in state court under the applicable statute of limitations, which the court presumes is four years. <u>See</u> Fla.Stat. § 95.11. Even if the claims were

not time-barred,[16] this court believes that the interests of judicial economy, convenience to the parties, and fairness would best be served by the exercise of supplemental jurisdiction over the state law claims.  This cause has now been pending for approximately two years, an extended period of discovery has been permitted and has now concluded, and numerous dispositive motions have been filed and addressed.  The case should now be ready, and should be allowed, to proceed to trial in this forum.

## CONCLUSION

For the reasons set forth above, the court recommends that DelGallo's motion for summary judgment on Counts I through III of the amended complaint, which Iovieno and Siren have joined, be granted and that summary judgment on these Counts also be granted in Marbella's favor; that RJSG's motion for default judgment against Marbella be denied, with leave to renew the motion as to Counts IV through VI only; and DelGallo's amended motion to withhold judgment on RJSG's damages be denied as moot.  The court further recommends that the district court exercise supplemental jurisdiction over RJSG's state law claims and DelGallo's cross-claim for indemnification and set this matter for trial.

Accordingly, it is **ORDERED**:

1.     The clerk shall terminate Robert D. Shelton as a Defendant in this action.

2.     The clerk shall docket the discovery documents provided by RJSG to chambers, identifying the documents as a supplemental exhibit to RJSG's response (Doc. 215) to the motion for summary judgment filed by DelGallo (Doc. 204).

And it is respectfully **RECOMMENDED** that:

1.     DelGallo's motion for summary judgment on Counts I through III of the amended complaint (Doc. 204), which Iovieno and Siren have joined, be **GRANTED** as to Defendants DelGallo, Iovieno, Siren, and Marbella.

---

[16] For example, if it were determined that any, or all of these claims, arose in "early 2007," when RJSG alleges it first became aware of the relationship between Siren and Iovieno (Doc. 19 at 5), or at any other time within the past four years, the claims might not be time-barred.

2.　　RJSG's "Motion and Application for Default Judgment against Marbella Condominium Developers, LLC and Incorporated Memorandum of Law" (Doc. 166) be **DENIED**, with leave to renew the motion as to Counts IV through VI of the amended complaint only.

3.　　DelGallo's "Amended Motion to Withhold Judgment on RJSG's Damages" (Doc. 188) be **DENIED, as moot.**

4.　　The district court exercise supplemental jurisdiction over RJSG's state law claims and DelGallo's cross-claim for indemnification and set this matter for trial.

At Pensacola, Florida this <u>11</u>th day of June 2010.


　　　　　　　　　　　　/s/ *Elizabeth M. Timothy*　　　　　　　
　　　　　　　　　　　　**ELIZABETH M. TIMOTHY**
　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>
　　　　**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.**　<u>**Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.**</u>　**A copy of objections shall be served upon the magistrate judge and all other parties.　Failure to object may limit the scope of appellate review of factual findings.　*See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**